UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

THE NORTHWESTERN MUTUAL LIFE INSURANCE
COMPANY,

                             Plaintiff,

           -against-

MARIE LISOWSKI AS TRUSTEE FOR THE BENEFIT
OF MATTHEW J. LISOWSKI AND JOETTA
LISOWSKI,

                             Defendants.

-------------------------------------------------------------------X

Civil Action No.:

## 07 CV 6619

**INTERPLEADER COMPLAINT**

Plaintiff, THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY ("Northwestern Mutual"), a corporation whose principal place of business is located at 720 East Wisconsin Avenue, Milwaukee, Wisconsin, by way of Complaint in Interpleader, alleges:

### THE PARTIES

        1.    Northwestern Mutual is a corporation organized and existing under the laws of the State of Wisconsin with its principal place of business at 720 East Wisconsin Avenue, Milwaukee, Wisconsin. Northwestern Mutual is a citizen of the State of Wisconsin and is authorized to conduct business in the State of New York.

        2.    Upon information and belief, Joseph J. Lisowski, prior to and at his death, was a resident and citizen of the State of New York, residing in Dutchess County, New York at 21 Falcon Crest Ct., Hopewell Junction, New York 12533.

        3.    Upon information and belief, Defendant, Joetta Lisowski, widow of Joseph J. Lisowski, is a resident of the State of New York, residing in Dutchess County, New York at 21 Falcon Crest Ct., Hopewell Junction, New York 12533.

4.      Upon information and belief, Defendant, Marie Lisowski, former wife of

Joseph J. Lisowski and Trustee for the benefit of Matthew J. Lisowski, as provided in the

Divorce Decree dated 12/28/95, is a resident of the State of New York, residing in Dutchess

County, New York at 9 Slate Hill Dr., Poughkeepsie, New York 12603.

### JURISDICTION AND VENUE

5.      This is an action for interpleader pursuant to Federal Rule of Civil

Procedure 22. This Court has jurisdiction over the subject matter of this interpleader action

under 28 U.S.C. § 1332 because there is diversity of citizenship between the plaintiff-stakeholder

and the defendants-claimants, and because Northwestern Mutual has in its custody an amount in

excess of $75,000, which represents the remaining proceeds of a life insurance policy.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(1) since

both of the defendants reside in this judicial district.

### FACTS SUPPORTING INTERPLEADER

7.      Joseph Lisowski ("decedent") was insured by Northwestern Mutual Life

Insurance Policy No. 15666399 ("Policy"), issued on February 20, 2001. The proceeds of the

Policy payable at the time of decedent's death on March 5, 2007 was $575,086.83.

8.      The Stipulation of Settlement and Agreement that was incorporated into

the Judgment of Divorce granted to Joseph Lisowski and Marie Lisowski on December 29, 1995

provides at Section 22.1:

> The Husband shall maintain life insurance policies on his life
> in the amount of Two Hundred Fifty Thousand ($250,000)
> Dollars. The Husband shall name the Wife as beneficiary of
> One Hundred Thousand ($100,000) Dollars of said life
> insurance coverage until the termination of Husband's
> obligation to pay maintenance to the Wife. The Husband
> shall name the Wife as trustee and the child as
> irrevocable beneficiary of One Hundred Fifty Thousand

> ($150,000) Dollars of said life insurance until the
> termination of Husband's obligation to pay maintenance
> to the Wife.  Upon the termination of Husband's
> obligation to pay maintenance to the Wife, Husband
> shall name the wife as trustee and the child as
> irrevocable beneficiary of Two Hundred Fifty
> Thousand ($150,000) Dollars[1] of said life insurance
> until the emancipation of the child.

A copy of the Judgment of Divorce and of the Stipulation of Settlement and Agreement are

annexed hereto as Exhibit "A."

        9.     On July 10, 2006, the Family Court of the State of New York deemed

Matthew Lisowski emancipated based on the fact that he was employed on a full-time basis and

was not matriculated in a college course of study towards a degree.

        10.    Decedent passed away on March 5, 2007 and Joetta Lisowski, decedent's

widow, submitted a claim for the proceeds of the Policy.  Northwestern Mutual paid her

$425,086.83 out of the total proceeds payable of $575,086.83 under the Policy.

        11.    By letter dated April 20, 2007, Northwestern Mutual asked Marie

Lisowski, in her capacity as Trustee FBO Matthew J. Lisowski if Matthew had obtained, or was

contemplating obtaining, an Order from the Court declaring himself "unemancipated."  A copy

of the April 20, 2007 Northwestern Mutual letter is annexed hereto as Exhibit "B."

        12.    By letter dated May 4, 2007, counsel for Marie Lisowski informed

Northwestern Mutual that since Matthew was not working at the time of his father's death, he

was not emancipated at that time, and accordingly that Marie Lisowski, as Trustee, was entitled

to proceeds of $150,000 under the Policy.  A copy of the May 4, 2007 letter from Marie

Lisowski's attorney is annexed hereto as Exhibit "C."

---

[1] The number inside the parenthesis originally read $250,000, but was crossed out and the figure $150,000 was written in with both parties initialing at the side.  The dollar amount written out in words was not, however, changed.

13.     By letter dated May 23, 2007, Northwestern Mutual notified counsel for both Marie Lisowski and for Joetta Lisowski that it would not be able to pay the remaining life insurance proceeds under the Policy until it was determined who was the appropriate beneficiary for the $150,000 in contention. The parties were also informed that if an agreement could not be reached by June 15, 2007, Northwestern Mutual would proceed to interplead that amount. A copy of Northwestern Mutual's May 23, 2007 letter is annexed hereto as Exhibit "D."

14.     By letter dated June 8, 2007, counsel for Joetta Lisowski demanded payment of the remaining proceeds of the Policy. A copy of the June 8, 2007 letter from Joetta Lisowski's attorney is annexed hereto as Exhibit "E."

15.     Northwestern Mutual claims no title to, or interest in, the remaining $150,000 in life insurance proceeds payable under the Policy, and is ready and willing to pay the proceeds of the Policy to the person or persons entitled to them, but Northwestern Mutual is unable to make that determination without exposing itself to double or multiple liability on account of the competing claims made by the defendants.

16.     Northwestern Mutual is ready, willing, and hereby offers to deposit the $150,000 in contention, together with accrued interest, if any, into the Court, or with a person duly authorized by the Court to receive it.

**WHEREFORE**, Northwestern Mutual requests that the Court enter judgment:

A. Directing Northwestern Mutual to pay the $150,000 remaining proceeds of the Policy, together with accrued interest, if any, into this Court;

B. Directing defendants to interplead their rights to such sum;

C. Restraining defendants, and each of them, from instituting any action against Northwestern Mutual to recover such sum;

D. Discharging Northwestern Mutual from all liability to defendants arising out of the matters herein set forth upon payment of the $150,000, with accrued interest, if any, into this Court;

E. Awarding Northwestern Mutual its costs, disbursements and attorney's fees;

F. For such other and further relief as this Court deems proper.


RIVKINRADLER LLP
Attorneys for Plaintiff
The Northwestern Mutual Life Insurance Company

By: _____
Norman L. Tolle (NT – 5081)


Dated: Uniondale, New York
       July 20, 2007

2057662 v1

At a TAP Part of the Supreme
Court of the State of New
York, held in and for the
County of Westchester at the
Courthouse thereof located at
White Plains, New York on the
$2\frac{7}{9}$ day of December, 1995.

# FILED

DEC 2 9 1995

LEONARD N. SPANO
COUNTY CLERK
COUNTY OF WESTCHESTER

PRESENT:

HON. MATTHEW F. COPPOLA, J.S.C.

- - - - - - - - - - - - - - - - - -X

JOSEPH J. LISOWSKI,

                    Plaintiff,

    - against -

MARIE LISOWSKI,

                    Defendant.

- - - - - - - - - - - - - - - - - - -X

### JUDGMENT OF DIVORCE

Index No. 10247/94

Assigned Justice:
Hon.

The Plaintiff having brought this Action for a Judgment of
Absolute Divorce by reason of the cruel and inhuman treatment of
Plaintiff by Defendant and a Summons with Notice bearing the
notation, "Action for a Divorce" and Verified Complaint having
been duly served upon Defendant within the State of New York, and
Defendant having appeared by her attorney, KENNETH J. RODEN,
ESQ., and the firm of BRENNAN FABRIANI & NOVENSTERN having been
substituted as attorneys for the Defendant, and Defendant having
served an Amended Verified Answer and Counterclaim upon the
Plaintiff, and Plaintiff having acknowledged service of the
Amended Verified Answer and Counterclaim, and Plaintiff having
waived his right to answer the Counterclaim, and having consented
to the entry of a Default Judgment against him without further
notice, and the parties having entered into a Stipulation of

notice, and the parties having entered into a Stipulation of Settlement and Agreement, dated December 29, 1995, settling and resolving all of the issues between them which are related to this action, and the aforesaid Stipulation of Settlement and Agreement having been duly filed with the Clerk of this Court, and the matter having been set down for the 29th day of December, 1995, before the undersigned, and the Defendant on that day having submitted written proof of service and in support of the essential allegations of the Verified Complaint, and such proof having been read by me, I decide and find as stated in the separate Findings of Fact and Conclusions of Law on even date herewith.

NOW, on motion of BRENNAN FABRIANI & NOVENSTERN, attorneys for Defendant herein, it is

ADJUDGED, that the marriage between MARIE LISOWSKI, Defendant, and JOSEPH J. LISOWSKI, Plaintiff, is dissolved by reason of the constructive abandonment of Defendant by Plaintiff; and it is further

ORDERED and ADJUDGED, that:

(a)  The Defendant's share of the basic child support obligation in this case is Seven Hundred Sixty-Two ($762.00) Dollars per month;

(b) The parties have voluntarily agreed to support for the child, MATTHEW JOSEPH LISOWSKI, payable by Plaintiff to Defendant in the amount of Four Hundred ($400.00) Dollars per month, such

- 2 -

Stipulation of Settlement and Agreement reciting, in compliance
with D.R.L. §240(1-b):

(i) The parties have been advised of the provisions of
D.R.L. §240(1-b);

(ii) The unrepresented party, if any, has received a
copy of the child support standards chart promulgated by the
Commissioner of Social Services pursuant to S.S.L. §111-i;

(iii) The basic child support obligation as defined in
D.R.L. §240(1-b) presumptively results in the correct amount of
child support to be awarded;

(iv) The Plaintiff's share of the basic child support
obligation in this case is Seven Hundred Sixty-Two ($762.00)
Dollars per month;

(c) The amount of child support agreed to herein deviates
from the basic child support obligation under DRL §240(1-b), and
said Stipulation of Settlement and Agreement is approved with
regard to child support for the following reasons;

(i) Plaintiff has agreed to pay maintenance to the
Defendant in a significant amount; and

(ii) Plaintiff has agreed to transfer his interest in
the marital residence to the Defendant;

(iii) Commencing upon the termination of maintenance
payable by the Plaintiff to the Defendant, Plaintiff's child
support obligation to the Defendant will increase to Fourteen
Hundred ($1,400.00) Dollars per month pursuant to the Stipulation
of Settlement and Agreement between the parties; and it is
further

- 3 -

ORDERED and ADJUDGED, that the Stipulation of Settlement and Agreement entered into between the parties on the 29th day of December, 1995, a copy of which is attached to and incorporated in this Judgment by reference, shall survive and shall not be merged in this Judgment, and the parties hereby are directed to comply with every legally enforceable term and provision of such Stipulation of Settlement and Agreement including any provision to submit an appropriate issue to arbitration before a single arbitrator, as if such term or provision were set forth in its entirety herein, and the Court retains jurisdiction of the matter concurrently with the Family Court for the purpose of specifically enforcing such of the provisions of that Stipulation of Settlement and Agreement as are capable of specific enforcement, to the extent permitted by law, and of making such further judgment with respect to maintenance, child support, custody or visitation as it finds appropriate under the circumstances existing at the time application for that purpose is made to it, or both; and it is further

ORDERED and ADJUDGED, that Defendant is authorized to resume the use of her maiden name or other former surname, to wit: CIOFFI.

E N T E R,

Hon. Matthew F. Coppola,
J.S.C.

Approved as to form and substance and Notice of Settlement waived:

Arthur Kass, Esq.
Attorney for Plaintiff

STATE OF NEW YORK, COUNTY OF WESTCHESTER SS:
I, LEONARD N. SPANO, COUNTY CLERK AND CLERK OF THE SUPREME AND COUNTY COURTS,
WESTCHESTER COUNTY DO HEREBY CERTIFY THAT I HAVE COMPARED THIS COPY WITH THE ORIGINAL
THEREOF FILED IN MY OFFICE ON    12-29-95.   AND THAT THE SAME IS A CORRECT
TRANSCRIPT THEREFROM AND OF THE WHOLE OF SUCH ORIGINAL.
IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND AND AFFIXED MY OFFICIAL SEAL.

10-5-05

COUNTY CLERK AND CLERK OF THE SUPREME AND COUNTY COURTS, WESTCHESTER COUNTY.
FEE PAID

— 4 —

DRAFT

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
- - - - - - - - - - - - - - - - - - - -x

JOSEPH J. LISOWSKI,

                          Plaintiff,

        - against -

MARIE LISOWSKI,

                          Defendant.

- - - - - - - - - - - - - - - - - - - -x

FILED

DEC 29 1995

LEONARD N. SPANO
COUNTY CLERK
COUNTY OF WESTCHESTER

STIPULATION OF
SETTLEMENT AND
AGREEMENT

Index No. 10247/94

Assigned Justice:

          , J.S.C.

        AGREEMENT, made this 29th day of ~~November~~ December, 1995, between

JOSEPH J. LISOWSKI, residing at 16F7 Scuppo Road, Danbury,

Connecticut (hereinafter sometimes referred to as the "Husband"

and as the "Father"), and MARIE LISOWSKI, residing at 9 Slate

Hill Drive, Poughkeepsie, New York (hereinafter referred to as

the "Wife" and the "Mother").


        W I T N E S S E T H :

        WHEREAS, the parties were duly married to each other in

Poughkeepsie, New York on November 10, 1985; and

        WHEREAS, there is one (1) infant issue of the parties, to

wit:  MATTHEW JOSEPH LISOWSKI, born August 1, 1987; and there are

no expected additional children of the marriage; and

        WHEREAS, a proceeding is presently pending in the Supreme

Court of the State of New York, County of Westchester, entitled

Joseph J. Lisowski v. Marie Lisowski, and it is the intention of

the parties to settle and resolve any and all issues in any way

relating to said action; and

        WHEREAS, the parties desire that this Agreement, which is

entered into after due and considered deliberation, shall be and

constitute a Separation and Post-Nuptial Agreement between them
with respect to any rights arising as the result of or out of the
marriage of the parties, and with respect to any funds, assets,
interest, both fixed and contingent, or properties, both real and
personal, wherever situated, now owned by the parties or either
of them, or standing in their respective names or which may
hereafter be acquired or received by any means whatsoever by
either of the parties, and with respect to the custody and
visitation and support of MATTHEW JOSEPH LISOWSKI, and further
desire that it shall be incorporated, but not merged, in any
Judgment of Divorce which may be entered in any action between
them; and

WHEREAS, the parties are entering into this Stipulation
of Settlement and Agreement of their own free will and without
force, coercion or duress of whatever nature; and

WHEREAS, each party fully understands the terms,
covenants and conditions of this Agreement, and after due
deliberation, accepts and agrees to such terms, covenants and
conditions; and

WHEREAS, the parties having had explained to them the
provisions of law affecting financial and property rights of
spouses, including those rights under any law; and

WHEREAS, the parties hereto warrant and represent to each
other that they, and each of them, fully understand all the
terms, covenants, conditions, provisions and obligations to be
performed or contemplated by each of them hereunder, and each

~ 2 ~

*Fair, msl LLP*

believes the same to be fair, just and reasonable and to be in his or her respective best interests; and

NOW, THEREFORE, in consideration of the promises and agreements hereinafter set forth, it is hereby stipulated, covenanted and agreed by and between the parties, as follows:

## 1. NO MOLESTATION

1.1  Neither party shall in any way molest, malign, disturb or trouble the other or interfere with the peace and comfort of the other or compel the other to associate, cohabit or dwell with him or her.

## 2. SEPARATE RESIDENCE

2.1  It is, and shall be, lawful for the parties hereto at all times to live separate and apart from each other and to reside from time to time at such place as each of such parties may see fit and to contract, carry on and engage in any employment, business or trade, which either may deem fit, free from control, restraint, or interference, direct or indirect, by the other in all respects as if such parties were sole and unmarried.

## 3. SEPARATE OWNERSHIP

3.1  Except as may be otherwise expressly set forth in this Agreement, each party shall own, free of any claim or right of the other, all of the items of property, real, personal and

- 3 -

mixed, of any kind, nature or description and wheresoever situate, which are now in his or her name, control or possession, with full power to him or to her to dispose of the same as fully and effectually in all respects and for all purposes as if he or she were unmarried.

3.2  It is the intention of the parties by this Agreement to effectuate a full property settlement between them and to divide equitably their property pursuant to the Laws of the State of New York as effective as of the date hereof.

3.3  Each party waives any and all rights which he or she may have to a distributive award or an award of equitable distribution in respect of any property acquired by the other or acquired jointly either before or during the marriage except as expressly provided for herein.  Each party waives any and all rights which he or she may have in respect to any property acquired by the other party individually after the effective date of this Agreement and each agrees never to seek through judicial proceedings or otherwise a distributive award or an award of equitable distribution with respect to any property acquired by the other party except as expressly provided for herein.

3.4  The parties agree that any property acquired after the effective date of this Agreement shall be his or her separate property.

3.5  Each party acknowledges that the division of the parties' marital property is fair and reasonable.

- 4 -

## 4. MUTUAL RELEASE AND DISCHARGE OF CLAIMS IN ESTATES

4.1  Except as expressly set forth in this Agreement, each party hereby releases, waives and relinquishes any and all rights which he or she may now have or may hereafter acquire, as the other party's spouse under the present or future laws of any jurisdiction or under any Will or testamentary writing now in existence (a) to share in the estate of the other party upon the latter's death; and (b) to act as executor or administrator of the other party's estate.  This provision is intended to, and shall constitute, a mutual waiver by the parties to take under any existing Will or testamentary writing of the other or to take against each other's Wills or testamentary writings, now or hereafter in force, under the present or future laws of any jurisdiction whatsoever.  The parties intend, by the aforedescribed waiver and release, to relinquish any and all rights in and to each other's estate including the right of set-off now provided in Section 5-3.1 of the Estates, Powers and Trusts Law of the State of New York, and all distributive shares presently provided in Section 4-1.1 of the Estates, Powers and Trusts Law and all rights of election presently provided for in Section 5-1.1 and Section 5-1.1(a) of said Law or any prior or subsequent similar provision of law of this or any other jurisdiction.  However, the foregoing shall not bar a claim on the part of either party against the other for any cause arising out of a breach of this agreement during the lifetime of the deceased party against whose estate such claim may be made.

- 5 -

## 5. MUTUAL RELEASE AND DISCHARGE OF GENERAL CLAIMS

5.1  Subject to the provisions of this Agreement, each party hereby remises, releases and forever discharges the other of and from all cause or causes of action, claims, rights or demands whatsoever, in law or in equity, which either of the parties hereto ever had or now has, against the other, except any or all cause or causes of action for divorce, annulment or separation, and any defenses either may have to any divorce, annulment or separation action now pending or hereafter brought by the other.

## 6. LEGAL INTERPRETATION

6.1  This Agreement and all of the rights and obligations of the parties hereunder shall be construed according to the laws of the State of New York as an Agreement made and to be performed within the State.

## 7. INDEPENDENT COVENANTS

7.1  Each of the respective rights and obligations of the parties hereunder shall be deemed independent and may be enforced independent of any of the other rights and obligations set forth herein.

## 8. IMPLEMENTATION

8.1  The Husband and Wife shall, at any and all times, upon request by the other party or his or her legal

— 6 —

representatives, promptly make, execute and deliver any and all
such other and further instruments as may be necessary or
desirable for the purpose of this agreement, without charge
therefor.

## 9. ENTIRE UNDERSTANDING

9.1  This Agreement contains the entire understanding of
the parties who hereby acknowledge that there have been and are
no representations, warranties, covenants or undertakings other
than those expressly set forth herein.

## 10. SEVERABILITY

10.1     If any provision of this Agreement is held to be
invalid or unenforceable, all other provisions shall,
nevertheless, continue in full force and effect.

## 11. FULL DISCLOSURE AND LEGAL
## REPRESENTATION AND FEES

11.1     The parties represent to each other that each of
them has had a full opportunity to read this Agreement, that each
of them understands the contents of this Agreement, and that this
Agreement is not entered into as a result of any fraud, duress,
or undue influence exercised by either party upon the other or by
any other person or persons upon either of them.  Each party has
made independent inquiry into the financial circumstances of the
other.  He or she is fully informed of the income, assets and
property of the other. Both parties agree that this Agreement has

- 7 -

been achieved after full disclosure and honest negotiations between themselves. Both parties acknowledge they are aware of their rights to receive sworn Net Worth Statements from each other under the Domestic Relations Law of the State of New York. The Wife hereby acknowledges that she has been given the Husband's Net Worth Statement, a copy of which is annexed attached hereto as Exhibit "A". The Husband hereby acknowledges that he has been given the Wife's Net Worth Statement, a copy of which is annexed hereto as Exhibit "B".

11.2    The Wife represents, and the Husband acknowledges, that the Wife has been represented by BRENNAN FABRIANI & NOVENSTERN, by SYLVIA L. FABRIANI, ESQ., 100 South Bedford Road, Mt. Kisco, NY 10549. The Husband represents, and the Wife acknowledges that the Husband has been represented by ARTHUR KASS, ESQ., Route 100, Somers, New York 10589.

11.3    Husband agrees to pay One Thousand ($1,000.00) Dollars to Wife's attorneys simultaneously with the execution of this Agreement by him. After payment of said amount, each of the parties shall be solely responsible for the payment of his or her counsel fees, accounting fees and disbursements incurred in connection with the legal services rendered with respect to the negotiation and preparation of this Agreement, including any and all legal fees due to any prior counsel for each of them. Husband also agrees to pay for the drawing up of Divorce papers, due upon signing of these papers.

12.    **COUNSEL FEES ON DEFAULT**

12.1    Should either party have any claim against the

- 8 -

other arising from an alleged breach of this Agreement and should
such alleged breach continue for 15 days after written notice of
the alleged breach is sent to him or to her, then in any action
or proceeding commenced by either party against the other in
which a judicial determination is made the successful party shall
recover from the other party all reasonable counsel fees and
expenses incurred by such successful party in connection with
such action or proceeding.

### 13.    RESPONSIBILITY FOR DEBTS

13.1    Except as provided for herein, the Wife
represents, warrants and covenants that she has not heretofore,
nor will she hereafter, incur or contract any debt, charge,
obligation or liability whatsoever for which the Husband, his
legal representatives or his property or estate is or may become
liable.  The Wife agrees to indemnify and hold the Husband
harmless of all loss, expenses (including reasonable attorneys'
fees) and damages in connection with or arising out of a breach
by the Wife of her foregoing representation, warranty and
covenant.

13.2    Except as provided for herein, the Husband
represents, warrants and covenants that he has not heretofore,
nor will he hereafter, incur or contract any debt, charge,
obligation or liability whatsoever for which the Wife, her legal
representatives or her property or estate is or may become

— 9 —

liable.  The Husband agrees to indemnify and hold the Wife
harmless of loss, expenses (including reasonable attorneys' fees)
and damages in connection with or arising out of a breach by the
Husband of his foregoing representation, warranty and covenant.
Each party will be solely responsible for any credit card debts
or cards issued in his or her individual name.

13.3    The parties agree that Husband shall be solely
responsible for all joint credit card obligations of the parties.
Each party shall be solely responsible for all credit card debt
in his or her individual name.

13.4    Husband agrees to indemnify the Wife and hold
her harmless of all loss, expenses, including reasonable
attorney's fees, and damages in connection with or arising out of
a breach by the Husband of his liability for all joint credit
card debt as provided in paragraph 13.3 above.

## 14.  INCOME TAX RETURNS

14.1    If, in connection with any joint Federal, State,
or local income tax returns heretofore or hereafter filed by the
Husband and Wife there is any deficiency assessment, the amount
ultimately determined to be due thereon, including penalties,
interest, etc., shall be paid by the party whose income or
deductions were the cause of such deficiency assessments, and
each party indemnifies and agrees to hold the other harmless

— 10 —

against any such assessment, penalty, interest, and any expenses, including without limitation, attorneys' and accountants' fees in connection therewith. Each party agrees to cooperate fully with the other in the event of any audit or examination of the said joint tax returns by a taxing authority and agrees to furnish to the party being examined or his (or her) designees, promptly and without charge, such papers, records, documents, authorizations and information as may be reasonably appropriate in connection with said audit or examination.

14.1.1  In connection with any income tax returns hereafter filed by the parties, the Husband shall have the right to claim the child, MATTHEW LISOWSKI, as a dependent for all purposes with regard to Federal and State income tax returns during 1995, 1996, 1997, 1998 and 1999. Commencing in the year 2000, and continuing thereafter, Husband and Wife shall alternate the dependency exemption for the child, with the understanding that the Wife shall be entitled to take said exemption in the year 2000. The parties acknowledge that Husband's right to claim said dependency exemptions is dependant upon Husband making all child support payments as required for in this Agreement.

14.1.2  The parties agree to execute all documents required by any taxing authority to give effect to subparagraph 14.1.1 herein.

Husband shall be entitled to deduction for mortgage interest and real estate taxes on the residence for 1995. mgl/ff

– 11 –

## 15.  PERSONAL PROPERTY

15.1     Except as provided for in this Agreement, the parties have heretofore equitably divided their personal property and they agree that each of them shall hereafter continue to possess, own, have and enjoy, independently of any claim or right of the other, all items of personal property of every kind, nature or description and wheresoever situated, now or hereafter belonging to him or to her, or in his or her name and/or present possession, with full power in him or her to dispose of the same as fully and effectually in all respects and for all purposes as though he or she were unmarried. Each party, simultaneously with the execution of this Agreement by the parties hereto, shall deliver to the other all property or documents evidencing ownership of property which by the terms of this Agreement is to remain or become the property of the other.

15.2     All household articles, household furniture and household effects in the former marital residence located at 9 Slate Hill Drive, Poughkeepsie, New York 12603 are hereby declared to be the sole and exclusive property of the Wife, except for the items listed in Schedule "C" annexed hereto, which are hereby declared to be the sole and exclusive property of the Husband and are to be removed from the marital residence at a date and time to be agreed upon between the parties within thirty (30) days from the date of this Agreement.

- 12 -

### 16. <u>MAINTENANCE</u>

16.1    Taking into consideration all relevant facts and circumstances, including but not limited to the financial circumstances of the respective parties and the employment of the Husband, the Husband does not seek or require any maintenance or support for himself from the Wife now or in the future. Therefore, no provision for the support of the Husband is made herein and Husband expressly waives any claim to receive support or maintenance from the Wife. *The term maintenance and alimony are interchang[eable]* mgl /// [initials]

16.2    Taking into consideration all relevant facts and circumstances, including but not limited to the financial circumstances of the respective parties and the lack of regular employment by the Wife, the Husband shall pay to the Wife for her support and maintenance the following:

16.2.1    Commencing on ~~December 1, 1995~~ *January 1, 1996* and continuing on the first of each month thereafter until ~~November~~ *December* ~~31, 1997,~~ ~~30, 1997,~~ *31, 1997,* Husband shall pay Eighteen Hundred Fifty ~~($1,850.00)~~ *$1,850.00* Dollars per month to Wife for her support and maintenance; and

16.2.2    Commencing on ~~December 1, 1997~~ *January 1, 1998* and continuing on the first of each month thereafter until ~~November~~ *December* ~~31, 1998~~ ~~30, 1998,~~ *31, 1998,* Husband shall pay Seventeen Hundred Seventy-Five ($1,775.00) Dollars per month to Wife for her support and maintenance; and

16.2.3    Commencing on ~~December 1, 1998~~ *January 1, 1999* and continuing on the first of each month thereafter until *December 31, 1999,* ~~November 30, 1999,~~ Husband shall pay Fifteen Hundred ($1,500.00)

- 13 -

Dollars per month to Wife for her support and maintenance.

16.3    The parties agree that said payments from the Husband to the Wife as and for support and maintenance shall commence on ~~December 1, 1995,~~ January 1, 1996, and shall continue on the first of ½ total due and the second half due on the 15th each month, each month thereafter as provided above.  The payment shall be made by check and shall be mailed by the Husband to the Wife at her residence or at such other address as designated by the Wife in writing to the Husband.

16.4    The parties agree that the payments to be made by the Husband to the Wife as and for her support and maintenance as provided above shall terminate upon the earliest occurrence of any of the following events:

16.4.0.1    death of Husband;

16.4.0.2    death or remarriage of Wife; or

16.4.0.3    ~~November 30, 1999.~~ December 31, 1999.

17.    CHILD CUSTODY AND VISITATION

17.1    The parties hereby agree that they shall have joint legal custody of the unemancipated child of the marriage, and Wife shall have primary physical custody of said child who shall reside with her.

17.2    It is the intention of the parties that the Husband/Father shall have liberal rights of visitation with the child.

17.3    When exercising his visitation rights, the Father shall pick the child up at the residence of the Mother and

- 14 -

shall return the child thereto at the termination of such period. *Father shall not consume excess alcoholic beverage when son is in his care.* ~mgl/ll

17.4     Each of the parties hereto agree to keep the *Mother shall not consume alcoholic beverages when son is in her care.* other informed at all times of the whereabouts of the child when

with the Father and Mother respectively, and they mutually agree

that if either of them has any knowledge of any illness or

accident or other circumstances affecting the child's health or

general welfare, the Father or the Mother, as the case may be,

will promptly notify the other of such circumstance.  The parties

agree that each may telephone the child at any time when the

child is in the care of the other parent.  Each agrees to furnish

the other relevant information such as telephone numbers, etc. in

or to carry out the intent of this provision. *Each also agrees to allow child to telephone either parent when in the care of the other parent.* ~mgl/ll

17.5     Each party hereto shall exert every reasonable *as much as child deems necessary*

effort to maintain free access and unhampered contact between the

child and the other party, and to foster a feeling of affection

between the child and the other party.  Neither party shall do

anything which may estrange the child from the other parent, or

which may hamper the free and natural development of the child's

love and respect for both parents.

17.6     It is the intention and hope of the parties that

the Husband's visitation rights be liberally construed, that the

child's holidays and vacations will be divided equally between

the parties, and that the parties will be flexible in their

attitude toward each other with respect thereto and shall

accommodate each other when requested to do so.  In addition, the

parties agree that the Father shall be entitled to specific

- 15 -

visitation with the child as follows:

    17.6.1  On alternating weekends from ~~5:45 p.m.~~ 6:00 on

Friday until 7:00 p.m. on Sunday and on Tuesday night each week

from ~~5:30 p.m.~~ 5:30 pm to 8:00 p.m. during the school year;

    17.6.2  During the school year, on alternate legal,

holidays.  If a school holiday falls on a Friday or Monday

immediately preceding or following any of the Father's weekend

visitation periods, then he shall have the option to extend said

period to coincide with the holiday, when the Father is actually

available to be with the child, ~~and with heavy consideration~~
~~given as to Matthews wants and needs.~~

    17.6.3  On Father's Day and the Father's birthday

each year;

    17.6.4  For a period of two weeks during ~~July of~~ (~~not~~ consecutive) July. the summer

~~not to coincide with the child's birthday,~~
~~each year with said two weeks to be consecutive or non-~~
~~consecutive at the Father's option, and for one week during~~
~~August each year, said week not to coincide with the child's~~
~~birthday; Father shall give written notice to the Mother of said~~
~~summer visitation no later than June 1st of each year; and the~~
~~parties further agree that the Father shall be entitled to one~~
~~weekend visitation from 5:45 p.m. on Friday to 7:00 p.m. on~~
~~Sunday during August each year, and, at Mother's election, a~~
~~second weekend visitation during the same time period in August~~
~~each year.~~ Father shall be entitled to additional
time during ~~summer after Matthew turns 10 years old,~~
~~with heavy consideration as to Matthews wants and~~

    17.6.5  The parties further agree that in the event

17.6.4 (cont'd)
On odd years Father shall have the 1st 2 weeks of July
and on even years Father shall have 2nd 2 weeks of July.
Father shall have 1 week's vacation during August.
Additional time during the summer ~~us~~ as mutually
agreed upon by the parties.

Husband relocates within fifteen ~~(15)~~ 15 miles from the child's

school, and the child is ten (10) years of age or older, then the

Tuesday night visitation during the school year provided for

above shall continue until school the following morning, with the

understanding that the Father shall be responsible to deliver the

child to school; ~~and furthermore, said overnight on Tuesday~~

~~will be at Matthew's election (choice).~~    17.6.6  At such other times as mutually agreed to by

the parties. ~~and parties child, Matthew.~~

17.7    The Mother shall have uninterrupted custody of

the child on Mother's Day and the Mother's birthday each year and

for two weeks during the summer. ~~July of each year and one week during August~~

~~of each year, said two week period to be consecutive or non~~

~~consecutive at the Mother's option, and Mother shall give written~~

~~notice to the Father concerning said two week period not later~~

~~than June 1st each year.~~    The parties agree that if Mother's Day

(or Father's Day or Father's Birthday)

or the Mother's birthday fall on a day designated as a day for

(or wifes designated weekend)

the Husband's visitation, Husband shall have the right to select

(or wife, as the case may be,)

a substitute day, either in the same week or the week immediately

next succeeding.

17.8    The Mother shall be entitled to uninterrupted

custody of the child on each of the following holidays:

17.8.1  Easter Day ~~until 11:00 a.m.~~ in all ~~even~~ odd

numbered years. ~~and commencing at 11:00 a.m. and continuing for~~

~~the remainder of Easter Day in all odd numbered years,~~

— 17 —

17.8.2  During one-half of the child's spring ~~in all even years, and ½ of child's winter~~ vacation from school ~~in all even numbered years and one-half of~~ ~~recess in all odd numbered year,~~ ~~the child's winter recess from school in all odd numbered years;~~  *and* *mgl/ ll l*

*Winter*

*even*  *and one half of vacation.* *mgl/ ll l*

17.8.3  On Thanksgiving Day in all odd numbered

years;

17.8.4  ~~From 5:00 p.m. on December 24th until 11:00~~ a.m. **O**n December 25th in all ~~odd~~ *even* numbered years, ~~and from 11:00~~ *mgl/ ll l* ~~a.m. on December 25th until 6:00 p.m. on December 26th in all~~ ~~even numbered years;~~ and

17.8.5  ~~From 11:00 a.m.~~ **O**n January 1st ~~until 11:00~~ *mgl/ ll l* ~~a.m. on January 2nd~~ in all even numbered years, ~~and from 6:00 p.m.~~ ~~on December 31st until 11:00 a.m. on January 1st in all odd~~ ~~numbered years.~~

17.9  The Father shall be entitled to visitation with

the child on the following holidays:

17.9.1  From ~~11:00 a.m.~~ *1:00 pm  11:00 am* on Easter Day until ~~11:00~~ *mgl/ ll l* a.m. the following day in all even numbered years, ~~and, to the~~ ~~extent that the Father has alternating weekend visitation on~~ *and one half of spring vacation.* ~~Easter weekend in an odd numbered year, his visitation would~~ *previous evening at 7:00 pm.* ~~terminate at 11:00 a.m. on Easter Day;~~  *mgl/ ll l*

*and spring*

17.9.2  During one-half of the child's winter recess *odd* from school, ~~in all~~ ~~even numbered years and one-half of the~~ *even* ~~child's spring recess from school in all~~ ~~odd-numbered years;~~  *mgl/ ll l*

17.9.3  On Thanksgiving Day in all even numbered

- 18 -

years commencing at ~~10:00~~ 11:00 a.m. and continuing until 11:00 a.m. on the day following Thanksgiving;

17.9.4    ~~From 6:00 p.m. on December 24th until 11:00 a.m. On December 25th in all even numbered years and~~ from ~~1:00 p.m.~~ 11:30 am on December 25th ~~until 6:00 p.m. on December 26th~~ in all odd numbered years; and

17.9.5    ~~From 6:00 p.m. on December 31st until 11:00 a.m.~~ On January 1st in all ~~even~~ odd numbered years, ~~and from 11:00 a.m. on January 1st until 11:00 a.m. on January 2nd in all odd numbered years~~

17.10    The parties agree that when the child is with the Mother or the Father, each parent shall provide appropriate sleeping arrangements for the child to insure that the child receives privacy and an appropriate night's sleep. ~~The parties further agree that heavy consideration will be given to Matthews wants and needs in respect to any of visitation plans made in this document Matthews happiness will always come first.~~

## 18.    CHILD SUPPORT STANDARDS ACT WAIVER, COMPUTATION and STATEMENT

18.1    The parties have been advised of the provisions of DRL 241(1-b) and FCA 413 (1)(b) (The Child Support Standards Act ("CSSA") as amended.

18.2    In accordance therewith, the parties have also been advised that the "basic child support obligation" provided in Domestic Relations Law 240(1-b) and Family Court Act 413(1)(b) would presumptively result in the correct amount of child support to be awarded.  In the event that this Agreement deviates from

- 19 -

the "basic child support obligation", the foregoing statutes
require this Agreement to specify the amount that such "basic
child support obligation" would have been and the reason or
reasons that such Agreement or Stipulation does not provide for
payment of that amount.  Such provision may not be waived by
either party or counsel.

    18.3    The Child Support Standards Act further provides
that nothing contained in Domestic Relations Law Section 240(1-
b)(b)(h) and Family Court Act 413(1)(h) shall be construed to
alter the rights of the parties to enter into validly executed
Agreements or Stipulations which deviate from the "basic child
support obligation" provided such Agreements or Stipulations
comply with the provisions of DRL 240(1-b)(h) and Family Court
Act 413(1)(b)(h).  The purpose of this Article is <u>solely</u> to
comply with the foregoing provisions.  The computations contained
in this Article are not material provisions of its execution as
between the parties and neither party is relying upon them or the
amounts set forth below in entering into this Agreement.

    18.4    Domestic Relations Law Section 240(1-b) and
Family Court Act 413(1)(b) provide the court shall calculate the
"basic child support obligation," and the non-custodial parent's
pro rata share of the basic child support obligation.  Unless the
court finds that the non-custodial parent's pro rata share of the
basic child support obligation is unjust or inappropriate, after

- 20 -

considering ten enumerated factors, it must order the non-custodial parent to pay his or her pro rata share of the "basic child support obligation." In arriving at the "basic child support obligation" the Court must calculate the "combined parental income" and multiply it by the appropriate "child support percentage." The "child support percentage" is defined as: 17% of the combined parental income for one child; 25% of the combined parental income for two children; 29% of the combined parental income for three children; 31% of the combined parental income for four children; and no less than 35% of the combined parental income for five or more children. Where there are five or more children, the Court must exercise its discretion as to the amount of the child support percentage. Where the combined parental income exceeds $80,000 per year, after the court determines the non-custodial parent's share of the basic child support obligation, it must next determine the amount of child support for the amount of combined parental income in excess of $80,000. It may do so, in the exercise of its discretion, through consideration of ten discretionary factors and/or the child support percentage. There are two additional items of support which the court must consider in determining the "basic child support obligation" and two items it may be consider in determining the non-custodial parent's share of the "basic child support obligation." When a custodial parent is working or

- 21 -

receiving education leading to employment, reasonable child care expenses must be apportioned pro rata, in the same proportion as each parent's income is to the combined parental income. Health care expenses must also be apportioned pro rata in the same proportion as each parent's income is to the combined parental income. If the custodial parent is seeking work, child care expenses as a result thereof may be apportioned. Educational expenses may also be awarded. They need not be apportioned. These expenses are discretionary and not based on a percentage of $80,000. Child care expenses for seeking work and educational expenses need not be awarded in proportion to the combined parental income.

     18.5    The calculation of the "basic child support" obligation in accordance with D.R.L. §240(1-b) is as follows:

     18.5.1  The Husband is employed with IBM. The parties acknowledge that his annual income is approximately Seventy-Six Thousand ($76,000.00) Dollars a year.

     18.5.2  The Wife's present income is approximately Four Thousand ($4,000.00) Dollars per year. The combined income of the parties is Eighty Thousand ($80,000.00) Dollars. The basic child support obligation of the Father taking into consideration the initial maintenance obligation provided for herein is Seven Hundred Sixty-Two ($762.00) Dollars per month.

     18.6   The child support provided for herein deviates

     - 22 -

from the basic child support obligation pursuant to DRL

§240(1-b) for the following reasons:

     18.6.1  Husband has agreed to pay maintenance to the

Wife in a significant amount; and

     18.6.2  Husband has agreed to transfer his interest

in the marital residence to the Wife.


### 19.  CHILD SUPPORT

   19.1    The Husband is to pay to the Wife as and for

child support the sum of Four Hundred ($400.00) Dollars per

month, commencing on ~~December 1, 1995~~ January 1, 1996 and continuing on the first *with ½ payment*

*and second half due on 15th of each month*

of each month thereafter until Husband's obligation to pay

maintenance to the Wife terminates.  The parties agree that

commencing upon the termination of Husband's obligation to pay

maintenance to the Wife, Husband shall pay to the Wife as and for

child support the sum of Fourteen Hundred ($1,400.00) Dollars per

month on the first of each month thereafter until the

emancipation of the child.  The payments shall be made to the

Wife by check and mailed to the Wife at her residence or the

address designated in writing.  The child support payments shall

terminate upon the first of the following events to occur:

     19.1.1  The child's attaining the age of 21 years or

22 years if the child is enrolled as a full-time, fully

matriculated student in college;

              – 23 –