

19.1.2  The child's marriage;

19.1.3  The child's death;

19.1.4  The child's full-time gainful employment, excluding vacational and seasonal employment and non full-time attendance at school;

19.1.5  The child's permanent residence away from the custodial home;

19.1.6  The child's entry into the Armed Forces of the United States or into the Peace Corps. or other similar service, provided, however, that upon discharge from the Armed Forces, Peace Corps. or other similar service, the child shall not be regarded as emancipated until the occurrence of another emancipation event, as defined in 19.1.1 – 19.1.5 above;

19.1.7  Death of the Husband; or

19.1.8  Death of the Wife.

19.2  The parties further agree that the Father shall pay his pro rata share of the cost of any child care expense actually incurred by the Wife for the Wife to be employed. Use of the wife's parents for childcare shall be ~~at~~ ~~no~~ ~~monetary~~ at no cost to the Father. Prior to changes in childcare arrangements, husband + wife shall agree on new arrangements.  *mg/lll*

**COLLEGE EDUCATION**

20.1  The parties shall pay for college education expenses for the child in proportion to each parties average earned income for the three (3) years preceding the child's first year of college.  If either party is unemployed because of

– 24 –

remarriage or availability of income from a source other than employment then these factors shall be considered in arriving at the proportional share.

20.2    The parties agree that the cost of the child's college education for all purposes of this provision shall be defined to include books, tuition, room and board, laboratory fees, and the cost of transportation of the child to and from school not less than four times per year, unless the Husband and Wife shall mutually agree to include additional expenses.

20.3    The parties agree that the total college education or other post-high school education expenses to be paid by a party for the child for any year shall not exceed his or her proportionate share of the average tuition and room and board for a school in the State University of New York system for the year in which the child attends college.

## 21.    WAIVER OF CHILD SUPPORT PAYMENTS THROUGH SUPPORT COLLECTION UNIT

21.1    The parties have been advised that unless they agree otherwise, to the extent the Father has W-2 wages, New York State Law (Social Services Law 111-g) requires that all child support payments be made to a centralized unit of the New York State Department of Social Services without other child enforcement resources and that payment of an administrative fee

- 25 -

may be required.  The Wife hereby specifically waives her right
to have her child support payments made to the New York State
Department of Social Services providing the Husband timely makes
all child support payments due under this Article.

## 22.  LIFE INSURANCE

22.1    The Husband shall maintain life insurance
policies on his life in the amount of Two Hundred Fifty Thousand
($250,000.00) Dollars.  The Husband shall name the Wife as
beneficiary of One Hundred Thousand ($100,000.00) Dollars of said
life insurance coverage until the termination of Husband's      *Dec 31 '99*
obligation to pay maintenance to the Wife.  The Husband shall
name the Wife as trustee and the child as irrevocable beneficiary
of One Hundred Fifty Thousand ($150,000.00) Dollars of said life
insurance until the termination of Husband's obligation to pay
maintenance to the Wife.  Upon the termination of Husband's
obligation to pay maintenance to the Wife, Husband shall name the
Wife as trustee and the child as irrevocable beneficiary of Two
Hundred Fifty Thousand ($250,000.00) ($150,000.00) Dollars of said life
insurance until the emancipation of the child.

22.2    The Husband shall be responsible for the payment
of the premiums necessary to maintain the existing life insurance
policy in full force and effect and shall maintain such policy
free of any and all liens, encumbrances, loans or pledges; and he

- 26 -

shall deliver to the Wife copies of certificates or other instruments evidencing the designation of the Wife as beneficiary pursuant to this provision.

22.3    So long as the Husband continuously makes all payments, all dividends hereafter payable under said policy shall belong to the Husband, who shall have the option of accepting payment or applying them in reduction of premiums.

22.4    In the event that, upon the Husband's death, the proceeds of the life insurance policy received by the Wife are less than the amounts required herein, either because of the Husband's failure to pay premiums, cancellation, encumbrance, or otherwise, then the Husband's estate shall be liable for the difference.

22.5    In the event that the Husband shall not have maintained the life insurance policies required herein, and there are no proceeds, such insurance as may not be in effect at his death which is due to the Wife shall be charged against the Husband's estate.

22.6    The Husband shall transmit to the Wife, at her written request, receipts showing that all premiums, fees and assessments have been timely paid. The Husband hereby authorizes the Wife to be informed by the insurance companies of the status of said insurance policies and the timely payment of all premiums, fees and assessments; and the Husband shall execute and

- 27 -

deliver to the Wife all forms, instruments and documents which may be required so that the Wife may obtain such information from the insurance companies.  The Husband shall only be required to provide proof of payment to the Wife up to four times each year.

22.7    The Wife agrees to maintain a life insurance policy on her life in the amount of Twenty-Five Thousand ($25,000.00) Dollars and shall name the Husband as trustee and the child as irrevocable beneficiary of said policy until the child is emancipated.  The Wife agrees that paragraphs 22.2 through and including 22.6 above shall apply with equal force to her obligation to maintain life insurance as provided herein.

### 23. MEDICAL AND HEALTH INSURANCE

23.1    The Husband agrees to provide medical, health and hospitalization insurance as well as major medical insurance for the benefit of the Wife and child herein comparable to the insurance presently provided by the Husband.  To the extent that Husband is required to maintain insurance coverage for the child of the parties pursuant to this provision, he shall maintain or cause to be maintained hospitalization and major medical protection comparable to the present plan at his expense during his lifetime for the benefit of the child until the child is emancipated; ~~said plan to be deemed comparable if it is equal to or better than the average medical insurance provided to an~~

— 28 —

~~employee of IBM Corporation.~~

23.2    The Husband represents and warrants that he is
presently carrying medical, health and hospitalization insurance,
as well as major medical insurance under an insurance plan in
effect through IBM Corporation, for the benefit of the Wife and
child.

23.3    The parties agree that Husband's obligation to
maintain medical and health insurance coverage for the Wife as
provided herein shall terminate upon the earlier happening of
Wife obtaining comparable coverage through her own employment or
~~three (3) years~~
~~thirty (30) days~~ after the date of the parties' divorce.
_thirty (30) days_

23.4    The parties agree that for two years from the
date of the parties' Agreement, the Husband shall pay all medical
and dental costs for the child whenever such costs are not
covered by medical and/or dental insurance, or to the extent such
costs are not reimbursed, said costs including but not being
limited to medication, routine office visits, surgery, nursing
care, pharmaceutical, optical, orthodontic, therapeutic, testing
and evaluation, orthodontia, and psychiatric care, whether
ordinary or extraordinary, except for elective and/or cosmetic
treatment.

23.5    After said two year period, the parties shall be
responsible for their pro rata share of all such unreimbursed
medical, dental and other health related expenses incurred on

- 29 -

behalf of the child.

23.6   The Wife shall not incur extraordinary or unusual medical expenses for the child without the prior approval of the Husband, which consent shall not be unreasonably withheld.   This obligation for the Wife to secure Husband's prior written approval shall not apply in the event of an emergency. Wife shall ~~incur only reasonable and~~ always request generic drugs as appropriate.   *[initials]*

## 24.   SAVINGS ACCOUNTS, CHECKING ACCOUNTS and CERTIFICATES OF DEPOSIT

24.1   Each party shall continue to own as his/her separate property any savings accounts/checking accounts and certificates of deposit in his/her individual name.

## 25.   MARITAL RESIDENCE

25.1   The parties acknowledge that they own as tenants by the entirety the marital residence located at 9 Slate Hill Drive, Poughkeepsie, New York (hereinafter "the premises").

25.2   Simultaneously with the execution of this Agreement, Husband shall execute and deliver to the Wife a Bargain and Sale Deed with Covenant's Against Grantor's Acts and related documents transferring all of his right, title and interest in the premises to the Wife.   Wife shall maintain sole right, title and interest in and to the premises.

25.3   Each party warrants and represents that he or she has not mortgaged, pledged, liened or encumbered the marital

- 30 -

residence or his or her right, title and interest therein, except for the existing first mortgage on said property.

25.4     In connection with the conveyance of the marital residence to the Wife, the Husband agrees that he will execute and deliver any and all papers at any time required to transfer his interest therein to the Wife in recordable form.  All costs incurred in connection with such transfer shall be borne by the Husband. Wife agrees to remove husband's name from household insurance policy within 30 days after execution of this agreement.

25.5     Simultaneously with the delivery of the deed, the Husband shall deliver to the Wife all insurance policies of any nature or description with respect to the marital residence or relating thereto which are in his possession or control.  The Wife agrees to remove the Husband's name from such policies promptly after the execution of this Agreement. Wife agrees

25.6     The Husband hereby waives any and all right to the possession, use and occupancy of the marital residence and agrees that the Wife shall have the sole possession, use and occupancy of same.

25.7     Simultaneously upon the execution and delivery of this Agreement, the ownership interest of any interest by the Husband in the marital residence shall terminate and without limiting the foregoing, in the event that the Wife shall sell or dispose of the marital residence, the Husband shall have no participation or right, title or interest in the proceeds of said sale or disposition.

25.8     The Wife hereby indemnifies the Husband against

– 31 –

all liability heretofore or hereinafter arising out of or in
connection with the marital residence.

## 26.  HUSBAND'S MASTER'S DEGREE

26.1    The Husband is presently undertaking a course of
study which will entitle him to receive a Master's Degree.  The
Wife hereby waives and relinquishes any and all claims she may
have to share in the value of said degree or any enhanced earning
capacity to which the Husband will become entitled by virtue of
obtaining said degree.

## 27.  AUTOMOBILES

27.1    The Wife has a 1979 Oldsmobile with title in her
name.  The Wife will be responsible for insurance and other
expenses on this vehicle.  The Husband will make no claim with
respect thereto.

27.2    The Husband has a 1995 Subaru with title in his
name.  The Husband will be responsible for insurance and other
expense on this vehicle.  The Wife will make no claim with
respect thereto.

## 28.  IBM STOCK

28.1    The Husband currently solely owns six (6) shares
of IBM stock.  The parties acknowledge that said IBM stock was
received by the Husband prior to the parties' marriage.  Wife
waives and relinquishes any right she may have to a claim in said

— 32 —

IBM stock.

## 29.    HUSBAND'S PENSION

29.1    In connection with his employment at IBM, the Husband is a participant in the IBM Retirement Plan, (hereinafter "Retirement Plan") located at International Business Machines Corporation, Old Orchard Road, Armonk, New York 10504.

29.2    The Husband is fully vested in the Retirement Plan. The Participant is Joseph J. Lisowski, Social Security #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 and his address is 16F7 Scuppo Road, Danbury, CT. The Alternate Payee is Marie Lisowski, Social Security #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 and her address is 9 Slate Hill Drive, Poughkeepsie, NY 12603.

29.3    The parties consent that the within Agreement may serve as the basis for a Court Order as a Qualified Domestic Relations Order or a Domestic Relations Order, as appropriate.

29.4    On receiving a certified copy of this or any appropriate Order thereon, the Plan Administrator shall allocate a fifty (50%) percent share of the Participant's interest in the Retirement Plan during the period of the parties' marriage to the Alternate Payee pursuant to a Qualified Domestic Relations Order. The Alternate Payee shall be entitled to her respective share of all benefits in which Participant maintains an interest, including but not being limited to PRP, PSRP, etc., and to a share in all future Plan improvements.

29.5    Except for the fifty (50%) percent allocation

- 33 -

awarded herein to the Alternate Payee, this Agreement and the
QDRO or DRO based hereon shall have no effect on the
Participant's remaining or future interest in the Retirement
Plan.

29.6    The provisions of the QDRO or DRO shall not be
construed to:

29.6.1  require the Retirement Plan to credit the
Alternate Payee's account with employee or employer contributions
made after the date of this Agreement;

29.6.2  require the Retirement Plan to provide to
the Alternate Payee a type or form of benefit, or any option not
otherwise provided under the Plan, except to the extent that the
provisions of this QDRO or DRO provide for the payment at the
earliest retirement date;

29.6.3  require the Retirement Plan to provide
increased benefits or benefits to be paid to another Alternate
Payee under another QDRO or DRO.

29.7    In the event the Internal Revenue Service
requirements are not met by this QDRO or DRO, the parties agree
to so amend this QDRO or DRO so as to effectuate the terms and
provisions of this Agreement.

~~29.8    The Husband agrees to pay the cost of the
preparation of the QDRO or DRO required by this provision.~~    *mgl /JJL*

### 30. HUSBAND'S TAX DEFERRED SAVINGS PLAN

30.1    In connection with his employment at IBM, the

- 34 -

Husband has a tax deferred savings plan with a balance as of June 30, 1995 of approximately Thirty-Five Thousand ($35,000.00) Dollars.

       30.2    The Wife hereby waives and relinquishes any and all rights she may have to a claim in said TDSP.

### 31.  DISTRIBUTIVE AWARD

       31.1    Except as otherwise provided for herein, the Husband waives any right, claim or title he may have to any assets in the Wife's name or possession.

       31.2    Except as otherwise provided for herein, the Wife waives any right, claim or title she may have to any assets in the Husband's name or possession.

       31.3    In exchange for the foregoing waivers, the Husband shall pay Twelve Thousand ($12,000.00) Dollars to the Wife by bank or certified check as follows:

       31.3.1   ~~Six~~ One Thousand ($~~6,000.00~~ 1,000.00) Dollars on January 5, 1996; and Five thousand ($5,000) Dollars on Feb 15, 1996 *[handwritten: RAGL/PLS]*

       and
       31.3.2   Six Thousand ($6,000.00) Dollars on July 1, 1996.

       31.4    The parties have agreed upon the foregoing distributive award to the Wife based upon their agreement following full and fair disclosure, and based upon the premise that the foregoing payment represents a fair and equitable distribution of the parties' marital assets, giving recognition to all of the factors set forth in the Domestic Relations Law and

- 35 -

the parties' respective contributions thereto, and will enable
the Wife to maintain a sufficient standard of living and
accumulate assets.   Each party waives any further right to
inspection, discovery and valuation of the property of the other.

## 32.  RECONCILIATION AND MATRIMONIAL DECREES

32.1    This Agreement shall not be invalidated or
otherwise affected by a reconciliation between the parties
hereto; or a resumption of marital relations between them unless
said reconciliation and said resumption be documented by a
written statement executed and acknowledged by the parties with
respect to said reconciliation and resumption and, in addition,
setting forth that they are cancelling this Agreement, and this
Agreement shall not be invalidated or otherwise affected by any
decree or judgment of separation or divorce made in any court in
any action which may presently exist or may hereafter be
instituted by either party against the other for a separation or
divorce.

32.2    Each party agrees that the provisions of this
Agreement shall be submitted to any court in which either party
may seek a judgment or decree of divorce or separation and that
the provisions of this Agreement shall be incorporated in said
judgment or decree with such specificity as the Court may deem
permissible and by reference as may be appropriate under law and
under the rules of the Court.  However, notwithstanding such
incorporation, the obligations and covenants of this Agreement

– 36 –

shall survive any decree or judgment of separation or divorce and shall not merge therein, and this Agreement may be enforced independently of said decree or judgment.

## 33. MODIFICATION AND WAIVER

33.1    Neither this Agreement, nor any provision hereof, shall be amended or modified, or deemed amended or modified, except by an Agreement in writing duly subscribed and acknowledged with the same formality as this Agreement.  Any waiver by either party of any provision of this Agreement or any right or option hereunder shall not be deemed a continuing waiver and shall not prevent or estop such party from thereafter enforcing such provision, right or option, and the failure of either party to insist in any one or more instances upon the strict performance of any of the terms or provisions of this Agreement by either party shall not be construed as a waiver or relinquishment for the future of any such term or provision, but the same shall continue in full force and effect.

## 34. RELIGIOUS DIVORCE

34.1    Each of the parties agree to cooperate with the other in obtaining promptly a religious divorce and/or annulment and to furnish to the other party a duly authenticated copy of the document or documents terminating the marital relationship in accordance with the tenets of their religion.

- 37 -

survive any decree or judgment of separation or divorce and shall not merge therein, and this Agreement may be enforced independently of said decree or judgment.

### 33.   MODIFICATION AND WAIVER

33.1     Neither this Agreement, nor any provision hereof, shall be amended or modified, or deemed amended or modified, except by an Agreement in writing duly subscribed and acknowledged with the same formality as this Agreement.  Any waiver by either party of any provision of this Agreement or any right or option hereunder shall not be deemed a continuing waiver and shall not prevent or estop such party from thereafter enforcing such provision, right or option, and the failure of either party to insist in any one or more instances upon the strict performance of any of the terms or provisions of this Agreement by either party shall not be construed as a waiver or relinquishment for the future of any such term or provision, but the same shall continue in full force and effect.

### 34.   RELIGIOUS DIVORCE

34.1     Each of the parties agree to cooperate with the other in obtaining promptly a religious divorce and/or annulment and to furnish to the other party a duly authenticated copy of the document or documents terminating the marital relationship in accordance with the tenets of their religion.

- 37 -

## 35.   CHANGE OF ADDRESS

35.1    The parties hereby agree that each will notify
the other by registered or certified mail, return receipt
requested, of any change of address, and/or telephone number,
within five days of the date of such change, so long as Husband
continues to be responsible to pay child support to the Wife
pursuant to this Agreement.

- 38 -

## SIGNATURE PAGE

IN WITNESS WHEREOF, the parties hereto set their respective hands and seals the day and year first above written, and they hereby acknowledge that this Stipulation of Settlement and Agreement consists of 40 pages, including the acknowledgment page.

JOSEPH J. LISOWSKI

MARIE LISOWSKI

- 39 -

STATE OF NEW YORK, COUNTY OF WESTCHESTER SS.

I, LEONARD N. SPANO, COUNTY CLERK AND CLERK OF THE SUPREME AND COUNTY COURTS, WESTCHESTER COUNTY DO HEREBY CERTIFY THAT I HAVE COMPARED THIS COPY WITH THE ORIGINAL THEREOF FILED IN MY OFFICE ON 12-29-95 AND THAT THE SAME IS A CORRECT TRANSCRIPT THEREFROM AND OF THE WHOLE OF SUCH ORIGINAL.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND AND AFFIXED MY OFFICIAL SEAL.

10-5-05

COUNTY CLERK AND CLERK OF THE SUPREME AND COUNTY COURTS, WESTCHESTER COUNTY.
FEE PAID

**ACKNOWLEDGMENTS**

STATE OF NEW YORK        )
                               Dutchess   s.s:
COUNTY OF WESTCHESTER    )

On the 28th day of ~~November~~ December, 1995, before me personally

came JOSEPH J. LISOWSKI, to me known and known to me to be the

individual described in and who executed the foregoing instrument

and he did duly acknowledge to me that he executed the same.

CHRISTINE LYN PAUL
Notary Public, State of New York
Resident Dutchess County
Commission Expires November 5, _96_                   _____
                                                      Notary Public


STATE OF NEW YORK        )
                               Dutchess   s.s.:
COUNTY OF WESTCHESTER    )

On the 28th day of ~~November~~ December, 1995, before me personally

came MARIE LISOWSKI, to me known and known to me to the

individual described in and who executed the foregoing instrument

and she did duly acknowledge to me that she executed the same.

CHRISTINE LYN PAUL
Notary Public, State of New York
Resident Dutchess County
Commission Expires November 5, _96_                   _____
                                                      Notary Public


- 40 -

 **Northwestern Mutual**

DEBORAH K. LUTHER
Life Benefits Specialist
Life Benefits Division
Policyowner Services Department
(800) 635-8855 ext. 665-3387

April 20, 2007

Marie Lisowski Trustee FBO
Matthew J Lisowski
9 Slate Hill Dr.
Poughkeepsie, NY 12603-5509

    Re:    Joseph J. Lisowski Jr
           15666399

Dear Ms. Lisowski:

I am writing to you with respect to the death of Joseph J Lisowski Jr and his life insurance policy 15666399. The May 14, 1996 Designation of Beneficiary by Owner lists you as trustee for Matthew J Lisowski, as is provided in the Judgment of Divorce, dated December 28, 1995. Matthew may have an interest in the aforementioned policy <u>under certain conditions</u> as described in the Judgment.

At this time, in order to ascertain if Matthew has any current interest in the policy, we need to know if Matthew has obtained, or contemplates seeking, an Order from the Court declaring himself "unemancipated," for the relevant period of time noted, and as that term is defined, in the Judgment of Divorce.

We, here at Northwestern Mutual, want to provide the best service to all of our insureds and beneficiaries, so your prompt attention to this matter is appreciated. A copy of this letter is also being sent to Matthew at his last known address.

We will hold our file open for thirty (30) additional days to allow you, or Matthew, to communicate with us. If we do not receive any response within that time period, we will continue to process the claim on this policy as though Matthew is "emancipated" as defined in the Judgment of Divorce.

Thank you for your cooperation in this matter. This information may be faxed to me at 414-665-4211.

Sincerely,



Deborah K. Luther

cc:    053, Austin E Hodgkins CLU ChFC
       48571, Michael P. Senkier

       Matthew J Lisowski
       9 Slate Hill Dr.
       Poughkeepsie, NY  12603-5509

GELLERT & KLEIN, P.C.

ATTORNEYS AND COUNSELORS AT LAW

75 WASHINGTON STREET

POUGHKEEPSIE, NEW YORK 12601-2303

(845) 454-3250

FAX: (845) 454-4652

www.gklaw.us

LEONARD KLEIN          SCOTT L. VOLKMAN
ARTHUR L. GELLERT      DAVID R. WISE
STEPHEN E. EHLERS      RODERICK J. MACLEOD
JOHN A. GEOGHEGAN      BEVIN S. HARRINGTON
LILLIAN S. WEIGERT     DANIEL H. STOCK
JAMES M. FEDORCHAK     LINDA M. MURRAY
STEPHEN E. DIAMOND     KELLY L. TRAVER

COUNSEL
S. NINA GELLERT
RAINA E. MAISSEL
ANTHONY M. QUARTARARO
SENATOR STEPHEN M. SALAND
ROBERT C. VINCENT, JR.

JOSEPH H. GELLERT
(1907-1989)

VARIOUS GELLERT & KLEIN ATTORNEYS
ARE ALSO ADMITTED TO PRACTICE IN
CT, FL, MA, ENGLAND

WESTCHESTER OFFICE
3010 WESTCHESTER AVENUE
SUITE 302
PURCHASE, NEW YORK 10577
(914) 249-0100
FAX: (914) 249-0111

May 4, 2007

## Certified Mail Return Receipt Requested and First Class Mail

Ms. Deborah K. Luther
Life Benefits Specialist
The Northwestern Mutual Life Insurance Company
720 East Wisconsin Ave
Milwaukee, WI 53202-4797

Re:    Joseph J. Lisowski, Jr.
Your File No. 15666399
Our File No. 21636.0039

Dear Ms. Luther:

I am contacting you in regards to the above insurance policy in your letter dated April 20, 2007. I have been contacted by Ms. Lisowski in connection with the above matter.

I believe your interpretation of the Stipulation of Settlement Agreement as amended by the order, is incorrect. In both documents the determination as to emancipation, is based upon whether or not Matthew is working full-time. The amended order specifically states "for so long as Matthew is working full time he shall be deemed emancipated". At the time of his father's death, Matthew was not employed and therefore, by the terms of the order, he is not emancipated.

Demand is hereby made upon Northwestern Mutual Insurance Company to pay the proceeds of the policy to Ms. Marie Lisowski as trustee for the benefit of Matthew J. Lisowski.

Any distribution by your company inconsistent with the terms of the agreement will give rise to further litigation and we will hold Northwestern Mutual responsible.

Should you have any questions please do not hesitate to contact me, otherwise please forward the check payable to Ms. Lisowski to my attention.

GELLERT & KLEIN, P.C.
ATTORNEYS AND COUNSELORS AT LAW

-2-

Very truly yours,

GELLERT & KLEIN, P.C.
BY:

STEPHEN E. DIAMOND

SED/dmm
cc:    Ms. Maria Lisowski
       Mr. Matthew J. Lisowski

F:\USER\clients\L\Lisowski\Northwestern Life ltr 5-4-07.wpd

 **Northwestern Mutual**

DEBORAH K. LUTHER
Life Benefits Specialist
Life Benefits Division
Policyowner Services Department
(800) 635-8855 ext. 665-3387

May 23, 2007

Gilbert and Klein PC
Attorneys and Couselors at Law
Attn: Stephen E. Diamond
75 Washington St.
Poughkeepsie, NY 12601-2303

Re:    Joseph J. Lisowski Jr

Dear Mr. Diamond:

I am acknowledging receipt of your letter dated May 4, 2007 informing us that Marie Lisowski is asserting an interest in the proceeds of 15666399 for the benefit of Matthew J. Lisowski.

Based on the Judgment of Divorce between Joseph J and Marie Lisowski dated December, 1995, and the subsequent Order dated 7-17-2006, there appears to be a difference in opinion on how these documents affect our payment to the appropriate beneficiary of $150,000 in life insurance proceeds. Therefore, we will not be able to make payment of this amount until this difference is resolved.

It is in the best interest of all involved if a mutual agreement can be reached. In this regard, we will require a signed statement by the interested parties, Joetta Lisowski and Marie Lisowski for the benefit of Matthew J Lisowski, evincing an agreement as to who is the appropriate beneficiary of the $150,000. If such an agreement can not be reached by June 15, 2007, I will refer this matter to our Law Department to interplead this amount.

If you have any questions, please feel free to contact me at 1-800-635-8855 x6653387.

Sincerely,

Deborah K. Luther

cc:    053, Austin E Hodgkins CLU ChFC
       48571, Michael P. Senkier

       Lieberman & LeBovit
       Attorneys at Law
       Attn: Mitchell Lieberman
       Suite 210 Brookside Park
       345 Kear St.
       Yorktown Heights, NY 10598

# MARSHALL S. BELKIN
## ATTORNEY AT LAW
### 345 KEAR STREET
YORKTOWN HEIGHTS, NEW YORK 10598

TEL. (914) 962-1111
FAX (914) 962-0498

MITCHELL P. LIEBERMAN
OF COUNSEL



June 8, 2007

Ms. Deborah K. Luther
Attn: B & T
720 East Wisconsin Avenue
Milwaukee, WI.    53210

Dear Ms. Luther:

I have a copy of the May 24 letter you sent to Gilbert and Klein with respect to Policy 15666399. I now understand that Northwestern's legal department refuses to release funds unless an agreement is reached.

There is no reason to seek to reach an agreement since there can be no doubt that the entire policy proceeds must be paid to Joetta Lisowski. I am appalled that Northwestern's position is that you cannot send me a copy of the Gilbert and Klein letter to Northwestern without Gilbert and Klein's approval. Does this mean that Northwestern can make decisions in a vacuum?

The money is due and payable to Joetta Lisowski now. Should your Law Department interplead the amount due, and because it is so inane, I am certain my application that my legal fees be assessed against Northwestern will be granted.

The further error your Law Department is making is that should they interplead or should I sue on behalf of Joetta Lisowski the decision to refuse to disclose the Gilbert and Klein letter to Northwestern will immediately become moot and consent of Gilbert and Klein will not be required.

Very truly yours,

MARSHALL S. BELKIN

CC:  Mr. Michael P. Senkier
     Northwestern Mutual
     316 Main Mall
     Poughkeepsie, N.Y. 12601